## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANTHONY ALLEGA CEMENT CONTRACTOR, INC. and UNITED STATES OF AMERICA, by and for the Benefit of Anthony Allega Cement Contractor, Inc., | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 18-875-SRF ) |
| JOHNSON CONTROLS FEDERAL SYSTEMS/VERSAR, LLC, and VERSAR, INC., and WESTCHESTER FIRE INSURANCE COMPANY, | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

### I.    INTRODUCTION[1]

Presently before the court in this breach of contract action is a motion filed by defendants

Johnson Controls Federal Systems/Versar, LLC (the "Joint Venture"), Versar, Inc. ("Versar"),

and Westchester Fire Insurance Company ("Westchester") (collectively, "defendants") to dismiss

for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and

failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil

Procedure 12(b)(6), or alternatively to stay or transfer venue.[2]  (D.I. 10)  The court has

jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(a), and 1367(a).  For the following reasons,

defendants' 12(b)(1) motion is denied, defendants' 12(b)(6) motion is granted-in-part and

---

[1] The parties consented to the jurisdiction of a magistrate judge to conduct all proceedings in this matter through final judgment and the case was assigned to the undersigned judicial officer on July 20, 2018.  (D.I. 15)

[2] Defendants' opening brief in support of its motion is D.I. 11, plaintiffs' answering brief is D.I. 17, and defendants' reply brief is D.I. 19.

denied-in-part, defendants' motion to transfer venue is denied, and defendants' motion to stay is granted for a limited period.

## II.     BACKGROUND

### A.  Procedural History

On June 13, 2018, plaintiffs Anthony Allega Cement Contractor, Inc. ("Allega") and the United States of America (collectively, "plaintiffs") originally filed this action against multiple defendants for money damages and a declaratory judgment. (D.I. 1)  On July 18, 2018, defendants filed their pending motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), or, in the alternative, to stay or transfer venue. (D.I. 10)

### B.  Factual Background

The Joint Venture was the prime contractor to the Department of Air Force Installation Contracting Agency ("the Government") on a public improvement project in Delaware at Dover Air Force Base, Project FJXT031005 (the "Project"). (D.I. 1 at ¶ 2)  Versar was the Joint Venture's subcontractor on the Project. (*Id.*)  Allega was a second-tier subcontractor and cement supplier to Versar. (D.I. 11 at 2)  Westchester provided the required Miller Act surety bond with a penal sum of $98,299,269.39 that the Joint Venture furnished to the Government. (D.I. 1 at ¶ 24)

On November 14, 2014, Versar and Allega executed Subcontract Agreement No. 009300 (the "Subcontract"). (D.I. 1 at ¶ 1)  Pursuant to the Subcontract, Allega was to demolish and replace a 9,600 foot long, 150 foot wide runway, "adjoining taxiways, airfield lighting, NAVAIDs,[3] incidental related work, and repair instrumental landing system (ILS) and runway

---

[3] "NAVAID" is an acronym for "navigational aid." *Navigational Aid (NAVAID) Data Form*, FEDERAL AVIATION ADMINISTRATION,

approach lighting" at the Dover Air Force Base. (D.I. 11, Ex. A at 9; D.I. 1 at ¶ 20) Following

the award of the Subcontract to Allega, the Project experienced repeated significant delays and

Allega incurred costs as it attempted to get the Project back on schedule. (D.I. 1 at ¶¶ 28-29, 37,

39-41) Allega notified Versar of the problems with delays and expenses. (*Id.* at ¶ 43) Allega

avers in the complaint that the Joint Venture and Versar have not paid Allega additional unit

costs for labor, equipment, and services. (*Id.* at ¶¶ 46, 54)

### C. The Subcontract

Article 29(a) of the Subcontract includes a provision regarding disputes that mandates

alternative dispute resolution ("ADR") in accordance with the prime contract's provisions,[4] as

the plaintiffs' sole remedy "[t]o the extent a claim, dispute or controversy arises out of, or relates

to, problems caused by Client[5] or for which Client is responsible." (D.I. 11, Ex. A at 29)[6] For

disputes or controversies "not arising out of, or relating to, problems caused by Client or for

which Client is responsible," Article 29(b) of the Subcontract states that:

> Seller [Allega] and Buyer [Versar] will first attempt to resolve such claim, dispute
> or controversy at the field level through discussions between Buyer's
> Representative and Seller's Representative. If a claim, dispute or controversy
> cannot be resolved through Buyer's Representative and Seller's Representative,
> Buyer's Senior Representative and Seller's Senior Representative, upon the
> request of either party, shall meet as soon as conveniently possible, but in no case
> later than thirty (30) days after such a request is made, to attempt to resolve such
> claim dispute or controversy. Prior to any meetings between the Senior

---

https://www.faa.gov/air_traffic/flight_info/aeronav/Aero_Data/7900.2D-NAVAID/ (last visited
Apr. 24, 2019).

[4] The prime contract was an agreement between the Joint Venture and the Government. (D.I. 11,
Ex. A at 30-31; Ex. B)

[5] "Client" as defined by the Subcontract is the Department of Air Force Installation Contracting
Agency. (D.I. 11, Ex. A at 1) The Subcontract was "in support of a United States Government
funded prime contract from [the Client]." (*Id.*)

[6] Citations to the Subcontract reference page numbers as they appear in the Subcontract.

Representatives, the parties will exchange relevant information that will assist the parties in resolving the claim, dispute or controversy.[7]

(*Id.* at 29-30)

The Subcontract includes a forum selection clause that provides that any disputes arising

from or regarding the Subcontract "will be litigated in a court of jurisdiction in the

Commonwealth of Virginia." (*Id.* at 7, 28, 30)

Finally, the Subcontract includes a "pay-if-paid" provision, which provides that:

[i]f Client shall order any changes, including additions, reductions or deletions, in the work to be performed, [Allega] shall only be entitled to adjustments in its Subcontract Sum and the times for completion of the Work attributable to such Client directed changes and then only to the extent [Versar] actually receives such adjustments from Client.

(*Id.* at 18)

## D. Related Litigation

On May 22, 2017, the Joint Venture filed suit against the Government in the United

States Court of Federal Claims (the "Government Action"), seeking delay costs in connection

with a six month delay in the Project "[d]ue to the contract changes directed by the Air Force."[8]

(D.I. 11, Ex. B at ¶¶ 14, 34-37) On June 6, 2016, the Joint Venture submitted a request for

equitable adjustment to recover its delay costs from the Government, which the Government

rejected. (*Id.* at ¶ 16) On October 5, 2016, the Government issued a final offer of $7,549,967,

which the Joint Venture rejected. (*Id.* at ¶¶ 17-18) On November 18, 2016, after negotiations,

the Government issued a unilateral modification, Modification 7 ("Mod 7"), in the same amount

as its final offer and extended the period of performance by six months. (*Id.* at ¶¶ 19-20)

---

[7] For ease of reference, the court adopts the label the parties associate with this Subcontract provision as the "ADR" provision.

[8] Only the Joint Venture is a plaintiff in the Government Action. (*See* D.I. 11, Ex. B)

4

According to the complaint in the Government Action, the Government has not explained how it calculated the amount paid under Mod 7. (*Id.* at ¶ 21)

The Joint Venture alleges, "[u]pon completion of the Phase 1 and Phase 2, total Delay Costs incurred by [the Joint Venture] and its subcontractors totaled $13,119,015.40. Since [Mod 7] paid out $7,549,967.00, [the Joint Venture's] unpaid Delay Costs total $5,569,048.40." (*Id.* at ¶ 23) Thus, the Joint Venture seeks to recover the difference between the actual delay costs incurred and the adjustment received under Mod 7. (*Id.* at ¶¶ 35-37) The Government Action remains pending and whether the Joint Venture may recover additional delay costs has not yet been determined. (*Id.*)

### E. Subcontract Forum Selection

The Subcontract mandates that "all disputes arising out of or related to [the Subcontract] shall be governed by the laws of the Commonwealth of Virginia without regard to its conflict of law principles that would apply the law of another jurisdiction . . . ." (D.I. 11, Ex. A at 28) Therefore, Virginia law is applicable to the resolution of contractual disputes in the instant case. *See Pyott-Boone Elecs. Inc. v. IRR Trust for Donald L. Fetterolf Dated Dec. 9, 1997*, 918 F. Supp. 2d 532, 537 (W.D. Va. 2013).

### III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter, or if the plaintiff lacks standing to bring its claim. Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the court's subject matter jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (quoting *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009)). In

reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply. In this regard, the court must accept all factual allegations in the complaint as true, and the court may only consider the complaint and documents referenced in or attached to the complaint. *See Church of Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008); *Gould Elec., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a factual challenge to the court's subject matter jurisdiction, the court is not confined to the allegations in the complaint. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Instead, the court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction. *See Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). Once the court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. *See Lincoln*, 800 F.3d at 105; *Mortensen*, 549 F.2d at 891.

### B. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft*

*v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

When determining whether dismissal is appropriate, the court must take three steps.[9] *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must identify the elements of the claim. *Iqbal*, 556 U.S. at 675. Second, the court must identify and reject conclusory allegations. *Id.* at 678. Third, the court should assume the veracity of the well-pleaded factual allegations identified under the first prong of the analysis, and determine whether they are sufficiently alleged to state a claim for relief. *Id.*; *see also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The third prong presents a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Iqbal*, 556 U.S. at 663-64; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### C. Transfer Venue

Section 1404(a) of Title 28 of the United States Code grants district courts the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

---

[9] Although *Iqbal* describes the analysis as a "two-pronged approach," the Supreme Court observed that it is often necessary to "begin by taking note of the elements a plaintiff must plead to state a claim." 556 U.S. at 675, 679. For this reason, the Third Circuit has adopted a three-pronged approach. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

"[F]orum selection clauses are presumptively valid and enforceable absent a showing by the resisting party that enforcement of the clause would be unreasonable under the circumstances." *Asphalt Paving Sys., Inc. v. Gannon*, 2015 WL 3648739, at *3 (D.N.J. June 11, 2015) (citing *M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 10 (1972)). In the Third Circuit, when facing a valid forum selection clause, a district court modifies its analysis three ways:

> First, no weight is given to the plaintiff's choice of forum. Second, the court does not consider arguments about the parties' private interests. Instead, 'a district court may consider arguments about public-interest factors only.' Third, 'when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules – a factor that in some circumstances may affect public-interest considerations.'

*In re McGraw-Hill Global Education Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (internal citations omitted) (quoting *Atlantic Marine Contr. Co. v. U.S. District Court for the Western Dist. of Texas*, 571 U.S. 49, 63-64 (2013)). "Because [public interest factors] will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atlantic Marine*, 571 U.S. at 64.

### D. Stay

A court has discretionary authority to grant a motion to stay. *454 Life Scis. Corp. v. Ion Torrent Sys., Inc.*, C.A. No. 15-595-LPS, 2016 WL 6594083, at *2 (D. Del. Nov. 7, 2016) (citing *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985)). Courts consider three factors in deciding how to exercise this discretion: (1) whether a stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage. *Id.* (citing *Advanced*

*Microscopy Inc. v. Carl Zeiss Microscopy, LLC*, C.A. No. 15-516-LPS-CJB, 2016 WL 558615, at *1 (D. Del. Feb. 11, 2016)).

## IV. DISCUSSION

### A. Sufficiency of the pleading with respect to satisfaction of conditions precedent

Plaintiffs allege claims for breach of subcontract (Count I), unjust enrichment (Count II), violation of the Prompt Payment Act (Count III), declaratory judgment (Count IV), and violation of the Miller Act (Count V). (D.I. 1 at ¶¶ 56-98) Defendants move to dismiss all five counts of the complaint and argue that this action was brought prematurely, as plaintiffs have not engaged in an ADR process nor alleged satisfaction of compliance with the Subcontract's dispute resolution requirements, a condition precedent to commencing litigation. (D.I. 11 at 8-9; Ex. A at 29)

"Courts disagree about whether Rule 9(c) imposes an affirmative duty to plead conditions precedent, or whether Rule 9(c) merely sets the standard for alleging performance of conditions precedent if such performance is pleaded." *Eskenazi v. Rural Community Hospitals of America, LLC*, 2018 WL 6436266, at *3 n.4 (W.D. Mo. Dec. 7, 2018) (internal citations omitted). The Fourth Circuit has not expressly ruled on this issue. *See Chesapeake Square Hotel, LLC v. Logan's Roadhouse, Inc.*, 995 F. Supp. 2d 512, 516-19 (E.D. Va. 2014). The Third Circuit, in *Hildebrand v. Allegheny County*, 757 F.3d 99 (3d Cir. 2014), concluded that "[t]he pleading of conditions precedent is governed by Rule 9(c), not Rule 8(a)." *Hildebrand*, 757 F.3d at 112.

#### i. ADR

Here, defendants argue that plaintiffs have failed to perform or allege satisfaction of the condition precedent, namely, the ADR provision. Defendants argue that plaintiffs have failed to allege that they completed the mandatory ADR process agreed to in the Subcontract. (D.I. 11 at

9

9) Plaintiffs, however, contend that the complaint sufficiently alleges compliance with the ADR provision, and specifically point to paragraphs 21 and 66 in the complaint, which allege that Allega "satisfied all conditions precedent to payment under the Subcontract." (D.I. 17 at 7-8; D.I. 1 at ¶¶ 21, 66) Plaintiffs argue that such allegations are sufficient under Rule 9(c), which states that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." (D.I. 17 at 7-8) *See* Fed. R. Civ. P. 9(c). Defendants aver that these paragraphs do not allege that Allega satisfied all conditions precedent *to filing suit*, but only allege satisfaction of all conditions precedent to *payment*. (D.I. 19 at 1)

Defendants' distinction between pleading all conditions precedent to filing suit versus pleading all conditions precedent to payment is insubstantial. Under Rule 9(c), plaintiffs have adequately pleaded this condition precedent by "track[ing] the language of Rule 9(c) by generally alleging in [the] complaint that all conditions precedent have occurred or been performed." *Chesapeake Square Hotel, LLC*, 995 F. Supp. 2d at 516 (internal quotation marks omitted). The complaint states "Allega substantially performed its obligations under the Subcontract, including all conditions precedent to payment." (D.I. 1 at ¶¶ 66, 21) Furthermore, the Joint Venture and Westchester cannot rely on the Subcontract's ADR provision as a basis for dismissal because they are not parties to the Subcontract. (*See* D.I. 11, Ex. A) Therefore, the court rejects defendants' argument on this point.

Even if defendants were correct in their assertion that ADR has not occurred, the failure to satisfy this condition precedent does not divest this court of subject matter jurisdiction.[10] "The

---

[10] Plaintiffs argue that defendants assert a factual attack on the complaint, and therefore they are allowed to introduce evidence outside of the pleadings. (D.I. 17 at 4 n.1) On this basis, plaintiffs rely on correspondence between Allega and Versar to argue that Allega repeatedly requested a meeting pursuant to the Subcontract, which Versar rebuffed for several months, until a meeting occurred on April 24, 2017. (D.I. 17 at 3) However, the court finds it unnecessary to

Court's power to hear a contractual dispute is unaffected by whether the parties have complied with that contract." *Dominion Transmission, Inc. v. Precision Pipeline, Inc.*, 2013 WL 5962939, at *2 (E.D. Va. Nov. 6, 2013). The court in *Dominion* addressed a similar issue, where the defendant argued lack of subject matter jurisdiction because of plaintiff's failure to pursue contractually mandated ADR prior to filing suit. *Id.* at *1-2. The court concluded that "[noncompliance with a condition precedent] impairs [*plaintiff's*] right to access the courts; it has no such effect on the *Court's* jurisdiction. The court has the power to hear the parties' contractual dispute, regardless of whether the parties themselves have complied with the terms of the ADR provision." *Id.* at *3 (emphasis in original). Furthermore, while dismissal is not warranted, the appropriate remedy would be a dismissal without prejudice with leave to amend.[11] Therefore, defendants' motion to dismiss is denied.

### ii. "Pay-if-Paid" Provision

Defendants assert that the Subcontract's "pay-if-paid" clause presents another condition precedent that bars Allega's breach of contract claim. (D.I. 11 at 10-11) (citing *Universal Concrete Prods. v. Turner Constr. Co.*, 595 F.3d 527, 529-31 (4th Cir. 2010) (upholding motion for summary judgment because of an unambiguous pay-when-paid clause that conditioned any payments to the subcontractor on the contractor's first receiving payment)). Defendants assert that because the Government Action is ongoing, it is clear that Versar and the Joint Venture have not yet been paid, and Allega's potential entitlement to additional compensation has not been

---

consider matters outside the pleadings because plaintiffs have met the requirements of pleading compliance with conditions precedent under Rule 9(c). Whether the complaint is challenged on its face under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6), the allegations of the complaint must be accepted as true.

[11] Additionally, no prejudice to the defendants would result from staying the case for a limited period of time so that the parties may engage in an ADR process. This is addressed more fully in Section (IV)(G), *infra*.

triggered as a result. (*Id.* at 11) However, defendants' argument speaks to the merits of the claim, which the court does not consider at this stage in the proceedings.

Conversely, plaintiffs assert that "pay-if-paid" provisions are invalid under both Delaware[12] and Virginia law. (D.I. 17 at 11) *See also* Del. Code Ann. tit. 6 § 3507(e)(2)-(3); Va. Cide Abb, § 11-4.1:1. Plaintiffs argue that, under Virginia law, "[a] provision that waives or diminishes a subcontractor's, lower-tier subcontractor's, or material supplier's right to assert payment bond claims or his right to assert claims for demonstrated additional costs in a contract executed prior to providing any labor, services, or materials is null and void." Va. Code Ann. § 11-4.1:1.

However, the Subcontract was executed in 2014, while Va. Code Ann. § 11-4.1:1 was effective as of July 1, 2015. "[S]tatutes in Virginia are 'always construed to operate prospectively unless a contrary legislative intent is manifest . . . .'" *U.S. ex rel. Manganaro Midatlantic LLC v. Grimberg/Amatea JV*, 2017 WL 6492719, at *5 (D. Md. Dec. 19, 2017). However, the court need not decide the validity and effect of the "pay-if-paid" provision at this stage of the proceedings when only the sufficiency of the pleading is at issue.

The complaint alleges that "Allega substantially performed its obligations under the Subcontract, including all conditions precedent to payment." (D.I. 1 at ¶ 66) The court in *U.S. ex rel. Tusco, Inc. v. Clark Construction Group, LLC*, 235 F. Supp. 3d 745 (D. Md. 2016) concluded that failure to plead satisfaction of a pay-if-paid clause did not warrant granting a motion to dismiss. *U.S. ex rel. Tusco, Inc.*, 235 F. Supp. 3d at 753 ("In a contract dispute, plaintiffs are not required to expressly plead satisfaction of a condition precedent to allege a

---

[12] In view of the choice of law provision in the Subcontract, Virginia law is applicable to the breach of contract allegations of the complaint. (D.I. 11, Ex. A at 28)

breach of contract claim – an allegation is sufficient if it alleges that the claimant 'has at all times performed all its proper and legitimate duties and obligations under its contract.'"). Therefore, plaintiffs can plausibly state a claim for breach of contract without expressly pleading that the "pay-if-paid" provision has been satisfied. Furthermore, only Versar can rely on the "pay-if-paid" clause as a basis for dismissal because the Joint Venture and Westchester are not parties to the Subcontract. (*See* D.I. 11, Ex. A)

Accordingly, defendants' motion to dismiss this count is denied.

### B. Count II – Unjust Enrichment

Pursuant to Virginia law, "a plaintiff alleging unjust enrichment must establish the following elements: (1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 704 (E.D. Va. 2007) (quoting *Nossen v. Hoy*, 750 F. Supp. 740, 744-45 (E.D. Va. 1990)).

Here, plaintiffs allege that "the Joint Venture has benefitted from and been unjustly enriched by virtue of Allega's performance of the Subcontract work and extra work, and Allega's incurring acceleration and additional Project completion costs." (D.I. 1 at ¶ 72) The complaint states that Allega "substantially completed all of the Subcontract Work." (*Id.* at ¶ 22) Plaintiffs allege that the Joint Venture knew of and accepted the benefit of Allega's performance. (*Id.* at ¶ 73) Therefore, plaintiffs have adequately alleged a claim for unjust enrichment against the Joint Venture.

Defendants argue that plaintiffs' unjust enrichment claim fails as a matter of law because Allega has a contractual remedy. (D.I. 11 at 11-12) The Subcontract expressly details the

process through which Allega could be compensated for additional work, and equitable relief is not available. (D.I. 11, Ex. A at 18-19) Defendants note that plaintiffs have not alleged that the Subcontract is unenforceable or invalid. (D.I. 11 at 12) Furthermore, defendants contend that because the Subcontract concerns the same subject matter as the unjust enrichment claim, Allega "cannot recover on a theory of unjust enrichment for services it rendered under a valid contract . . . even though the services provided a benefit to a third party . . . with whom [it] had no contract." (D.I. 19 at 4-5) (quoting *Fed. Sav. & Loan Ins. Corp. v. Quality Hotels & Resorts, Inc.*, 1991 WL 30211, at *4 (4th Cir. 1991)).

Plaintiffs do not dispute defendants' assertion that the Subcontract bars equitable relief. (D.I. 17 at 12-13) Instead, plaintiffs assert that they have adequately pleaded an unjust enrichment claim against the Joint Venture and Westchester because Allega does not have a contract with the Joint Venture and Westchester's liability is derivative of the Joint Venture's liability. (*Id.*) Moreover, plaintiffs argue that they are entitled to plead the unjust enrichment claim against Versar as an alternative claim for relief under Fed. R. Civ. P. 8(d)(2)-(3). Fed. R. Civ. P. 8(d)(2) states that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). However, "[w]hile [a plaintiff] need not use particular words to plead in the alternative, it must use a formulation from which it can be reasonably inferred that this [is] what the plaintiff was doing." *Azko Nobel Coatings Inc. v. Pearl Avenue USA, Ltd.*, 2010 WL 11564918, at *3 (E.D. Va. Feb. 23, 2010) (internal quotation marks omitted). In this instance, the pleading is sufficient to set forth plaintiffs' unjust enrichment claims against the Joint Venture. However, the court grants in part the motion to dismiss in favor of Westchester and

Versar because the court agrees that the pleading fails to adequately state the plaintiffs' theory of liability against each defendant nor provide notice to Versar that plaintiffs are pleading an alternate, non-contractual theory of liability. However, it is a deficiency that may be cured by amendment of the complaint.

Therefore, defendants' motion to dismiss Count II should be granted-in-part without prejudice only with respect to defendants Westchester and Versar.

### C. Count III – Prompt Payment Act

Defendants argue that Allega lacks standing to bring a claim under the Prompt Payment Act ("PPA"), 31 U.S.C.A. § 3901, *et seq.* (D.I. 11 at 12) Defendants note that courts have interpreted 31 U.S.C.A. § 3905(i) and determined that the PPA does not confer a private right of action upon subcontractors for performance of government contracts. (*Id.*) Because Allega was a second-tier subcontractor and supplier, defendants conclude that Allega lacks the ability to sue under the PPA. (*Id.* at 13) Plaintiffs cite no contrary authority that would permit this claim to survive dismissal. (D.I. 17 at 13)

The PPA was enacted "in an effort to provide the federal government with an incentive to pay government contractors on time by requiring agencies to pay penalties – in the form of interest – on certain overdue bills." *U.S. ex rel. IES Commer., Inc. v. Continental Ins. Co., Inc.*, 814 F. Supp. 2d 1, 2 (D.D.C. 2011). The PPA was later amended to include provisions applicable to subcontractors. *See id.* Under the PPA, prime contractors with the federal government are required to include "a payment clause which obligates the prime contractor to pay the subcontractor for satisfactory performance under its subcontract within 7 days out of such amounts as are paid to the prime contractor by the agency under such contract." 31 U.S.C. § 3905(b)(1). Furthermore, the PPA requires prime contractors to insert "an interest penalty

clause which obligates the prime contractor to pay to the subcontractor an interest penalty on amounts due in the case of each payment not made in accordance with the payment clause included in the subcontract pursuant to paragraph (1) of this subsection." *Id.* at § 3905(b)(2). "Absent from the PPA is any explicit provisions for subcontractor enforcement if the prime contractor fails to make timely payment." *Continental Ins. Co.*, 814 F. Supp. 2d at 2.

The PPA does not grant subcontractors a separate cause of action, "beyond common law breach of contract, for violations of the required subcontract language." *U.S. ex rel. Asphalt Contractors, & Site Work, Inc. v. KAR Contracting, LLC*, 2015 WL 3651279, at *5 (S.D. W. Va. June 11, 2015) (citing 31 U.S.C.A. § 3905(b)). Plaintiffs misread *U.S. ex rel. IES Commer., Inc. v. Continental Ins. Co., Inc.*, 814 F. Supp. 2d 1 (D.D.C. 2011), which expressly granted the defendant's motion to dismiss plaintiff's PPA claim because the PPA does not state any explicit provisions for subcontractors to bring a private cause of action. *Continental Ins. Co.*, 814 F. Supp. 2d at 3-4. The court stated, "it makes little sense to assume, as a default, that statutory directives create private rights of action because doing so could diminish legislators' enthusiasm for creating standards for improved conduct . . . . [T]his court finds that the PPA does not create an implied right of action." *Id.* at 4. Accordingly, plaintiffs lack standing to bring a PPA claim.

Plaintiffs argue that even if the court were to dismiss their PPA claim, Allega would still be permitted to recover under "contractual remedies ordinarily available to [it]." (D.I. 17 at 13) (quoting *U.S. ex rel. Virginia Beach Mech. Servs., Inc. v. SAMCO Constr. Co.*, 39 F. Supp. 2d 661, 677 (E.D. Va. 1999)). Additionally, plaintiffs cite *U.S. ex rel. McFadden Mech., Inc. v. FSEC, Inc.*, 2001 U.S. Dist. LEXIS 24201 (E.D. Pa. Dec. 6, 2001) to support plaintiffs' ancillary argument that the court may still award prejudgment interest on the underlying amounts allegedly owed. (D.I. 17 at 14) However, plaintiffs' damages argument is not appropriate at this

stage in the proceedings and plaintiffs' cited authority does not otherwise support plaintiffs' contention that they properly pleaded a PPA claim. Accordingly, defendants' motion to dismiss Count III is granted with prejudice with respect to all defendants.

### D. Count IV – Declaratory Judgment

Defendants argue that Count IV should be dismissed because the court lacks subject matter jurisdiction over the matter, and therefore, the court cannot preside over a declaratory judgment action without "another independent basis for jurisdiction." (D.I. 11 at 10) (quoting *Washington v. Donley*, 802 F. Supp. 2d 539, 554 (D. Del. 2011)). The court concluded that subject matter jurisdiction exists in section (IV)(A) *supra*. Therefore, defendants' motion to dismiss is denied with respect to Count IV.

### E. Count V – Miller Act

"The purpose of the Miller Act is to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings." *Howell Crane & Rigging, Inc. v. Naylor Cos., LLC*, 2014 U.S. Dist. LEXIS 191994 (W.D. Tex. Apr. 14, 2014) (quoting *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 220 (5th Cir. 2012)). "The Act gives suppliers and subcontractors the right to sue a prime contractor in U.S. district court for the amount owed to them . . . . This statutory scheme was created to protect parties such as subcontractors or suppliers who work on federal projects as state-law liens cannot be applied against federally-owned property and traditional state-law remedies are unavailable." *Arena*, 669 F.3d at 220.

Defendants provide three arguments to support their motion to dismiss the Miller Act claim asserted in Count V of the complaint. The court will address each in turn.

### i. Westchester's derivative liability

Defendants argue that Westchester's liability is derivative of the liability of the Joint Venture and Versar with respect to Allega. (D.I. 11 at 14)  Defendants conclude that because neither the Joint Venture or Versar is liable for some or all of Allega's claims in this matter, Allega has no valid claim against Westchester.  (*Id.*)

Plaintiffs argue that Versar is not Westchester's bonded principal.  (D.I. 17 at 14)  Rather, Westchester's liability is derivative of the liability of its bonded principal, the Joint Venture. Plaintiffs contend, therefore, that the dismissal of claims against Westchester is inappropriate regardless of the outcome of the motions to dismiss plaintiffs' claims against Versar.  (*Id.*) Defendants' arguments as to whether defendants are liable to plaintiffs is improper at this stage in the proceedings, where the court accepts as true all well pleaded factual allegations contained within the complaint.

### ii. Sufficiency of pleading compliance with the mandatory notice requirement under the Miller Act

Additionally, defendants aver that Allega has failed to plead compliance with the mandatory notice requirement under the Miller Act.  (D.I. 11 at 14-15) (citing 40 U.S.C. § 3133(b)(2))  Section 3133(b)(2) requires a second-tier subcontractor that has a contractual relationship with a subcontractor, but no contractual relationship with the contractor furnishing the payment bond, to provide "written notice to the contractor within 90 days from the date on which [the second-tier subcontractor] did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made."  40 U.S.C. § 3133(b)(2).

Plaintiffs argue that defendants are cognizant of Allega's compliance with the 90-day notice requirement under the Miller Act because of correspondence and a proof-of-claim form plaintiffs submitted to defendants in February and March 2017.  (D.I. 17 at 15; D.I. 18 at Ex. B)

When determining a motion to dismiss pursuant to Rule 12(b)(6), the court generally "may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks and citations omitted) (emphasis in original). The exhibits plaintiffs attached to their answering brief were not attached to the complaint or unambiguously relied upon by the complaint, as in *In re Burlington*. (*See* D.I. 1) Therefore, they will not be considered.

The averment in the pleading relevant to notice under the Miller Act is as follows: "[t]he Joint Venture and/or Versar had actual and constructive notice of the impact of the changes, delays, and hindrances on Allega's planned construction sequence and Project schedule" and that "Allega provided the Joint Venture and/or Versar with timely notice of the problems caused by [schedule delays]." (D.I. 1 at ¶¶ 44, 51) Therefore, plaintiffs have adequately pleaded that they satisfied the requirement of providing timely notice under the Miller Act. Defendants' motion to dismiss is denied.[13]

### iii. Sufficiency of the pleadings with respect to Allega's claims against Westchester

To sufficiently state a Miller Act claim, a plaintiff must allege that: "(1) it has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131; and (2) it has not been paid in full within 90 days." *Oldcastle*

---

[13] Even if the court would find persuasive the opinion relied upon by defendants, *U.S. ex rel. Howell Crane & Rigging, Inc. v. Naylor Cos., LLC*, 2014 U.S. Dist. LEXIS 191994 (W.D. Tex. Apr. 14, 2014), dismissal is not warranted. Any deficiency in pleading compliance with the Miller Act's notice provision could be cured by amendment without prejudice to defendants. *See U.S. ex rel. Howell Crane & Rigging, Inc.*, 2014 U.S. Dist. LEXIS 191994, at *8.

*APG Northeast, Inc. v. Suffolk Constr. Co., Inc.*, 2012 WL 5868897, at *4 (E.D. Va. Oct. 31, 2012) (internal quotations omitted) (quoting *U.S. ex rel. Thyssenkrupp Safway, Inc. v. Tessa Structures, LLC*, 2011 WL 1627311 (E.D. Va. Apr. 27, 2011)). Defendants contend that Allega has not alleged that Westchester agreed to bond any additional scope of work under Mod 7 or any other modifications. (D.I. 11 at 16) Therefore, defendants argue, work performed under Mod 7 was not covered by the payment bond and Westchester cannot be liable under the bond for that additional work. (*Id.*) Plaintiffs aver that Westchester waived its right to notice of any modifications to the Subcontract and agreed to bond any additional scope of work, such as Mod 7. (D.I. 17 at 16)

Consideration of the merits of Westchester's alleged liability under the bond is inappropriate at the pleadings stage. To the extent defendants' arguments attack the sufficiency of the pleadings with respect to plaintiffs' allegations that Westchester agreed to bond any additional scope of work, the appropriate remedy is amendment of the pleading. Accordingly, defendants' motion to dismiss Count V is granted without prejudice.

### F. Transfer of Venue

Defendants proffer an alternative argument that the case must be transferred to the Eastern District of Virginia if it is not dismissed. Defendants' argument rests solely on their contention that the forum selection clause in the Subcontract trumps the Miller Act's venue provision.[14] (D.I. 11 at 19-20; Ex. A at 7, 28, 30)

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action "to another district where the case might have been brought, or to which the parties have consented, for the

---

[14] *See* 40 U.S.C.A. § 3133(b)(3)(B) ("A civil action brought under this subsection must be brought . . . in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy.").

convenience of the parties and witnesses and in the interest of justice." *In re McGraw-Hill*, 909 F.3d at 57. The party moving to transfer venue under section 1404(a) bears the burden of persuasion. *See id.*

In 2013, the Supreme Court held that a traditional balancing test is modified in three ways when a forum selection clause applies to a dispute. *See Atlantic Marine*, 571 U.S. at 63. First, the court does not weigh the plaintiff's choice of forum. *See id.* Additionally, the court does not consider the parties' private interests, but only considers arguments about public interest factors.[15] *See id.* at 64. Finally, in the face of a valid forum selection clause, a section 1404(a) transfer of venue will not carry the original venue's choice of law rules. *See id.*

Federal law controls the question of whether to enforce a forum selection clause. *See In re McGraw-Hill*, 909 F.3d at 58. According to the Third Circuit, the "scope" of a forum selection clause is determined by state law. *Id.* The scope is "'whether the claims and parties involved in the suit are subject' to the clause." *Id.* (quoting *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 180 (3d Cir. 2017)). Thus, state law "typically governs . . . whether the clause applies to a non-signatory as an intended beneficiary or closely related party."[16] *Id.*

The Subcontract includes a choice of law provision specifying that disputes under the Subcontract are governed by law of the State of Virginia. (D.I. 11, Ex. A at 28)

---

[15] "The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (internal citations omitted).

[16] Neither defendants nor plaintiffs engage in an analysis of the scope of the forum selection clause in dispute.

In their opening brief, defendants fail to address the basis for allowing the Joint Venture and Westchester, non-parties to the Subcontract, to exercise the forum selection clause. Plaintiffs acknowledge that the only defendant who could arguably exercise the forum selection clause is Versar. (D.I. 17 at 19-20)  Plaintiffs focus on the public interest factors in the transfer analysis, arguing that the public policy of Delaware and considerations of judicial economy compel maintaining the action in the present forum. (*Id.* at 19) (citing Del. Code Ann. tit. 6 § 3507(e)(5))  Moreover, plaintiffs argue that the Joint Venture and Westchester are not so "closely related" to the Subcontract that it is foreseeable that they should be bound by the forum selection provision to litigate the dispute in the Eastern District of Virginia. (*Id.* at 20)

Defendants' only attempt to address the availability of the forum selection clause to the Joint Venture and Westchester appears in the reply brief. (D.I. 19 at 8-10)  It is undisputed that the Joint Venture and Westchester are not intended third party beneficiaries. As to Westchester, defendants argue that it can invoke the forum selection clause because its alleged liability to Allega "is derivative of Versar's liability." (*Id.* at 9)  Defendants fail to cite any authority for the argument, nor do they accurately acknowledge that the bonded principal is the Joint Venture, not Versar individually. As to the Joint Venture, defendants argue that it was foreseeable that it would exercise the forum selection clause because its conduct is so "closely related" to the Subcontract and Allega's claims that the Joint Venture was unjustly enriched by the additional work that Allega performed. (*Id.* at 10)

"In determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement." *In re McGraw-Hill*, 909 F.3d at 63 (quoting *Carlyle Inv. Mgmt. LLC v.*

*Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015)). Defendants have not addressed any of these factors concerning the Joint Venture and Westchester other than in conclusory fashion. (D.I. 11 at 19-20; D.I. 19 at 8-10) *See Huberman v. Interval Leisure Grp., Inc.*, 2015 WL 3889431, at *4 (E.D. Pa. June 24, 2015). Therefore, no basis exists for the court to find the Joint Venture and Westchester are so closely related to the Subcontract that they can invoke its forum selection clause.

Practical considerations must guide the court's transfer analysis when a contractual forum selection provision is unavailable to all defendants in the case. The court in *ABC Medical Holdings, Inc. v. Home Medical Supplies, Inc.*, 2015 WL 5818521 (E.D. Pa. Oct. 6, 2015) contemplated the issue of a forum selection provision binding some, but not all the parties. "A situation where only some of the parties are bound to the forum selection clause 'implicat[es] concerns attending parallel lawsuits not present in *Atlantic Marine*.'" *ABC Medical Holdings, Inc.*, 2015 WL 5818521, at *9 (quoting *In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014)). Furthermore, "the need – rooted in the valued public interest in judicial economy – to pursue the same claims in a single action in a single court can trump a forum selection clause." *Id.* (quoting *In re Rolls Royce Corp.*, 775 F.3d at 679). Here, the court concludes that it would be inappropriate and inefficient to fragment this action such that the contractual claims against Versar are transferred, while the claims against the Joint Venture and Westchester remain in the District of Delaware. Doing so "would result in inefficient and duplicative litigation." *Id.* Therefore, the court denies defendants' alternative motion to transfer venue to the Eastern District of Virginia.

**G. Stay**

Defendants argue, alternatively, that indefinitely staying the present action until the resolution of the Government Action will simplify issues for trial and avoid the risk of inconsistent results. (D.I. 11 at 17-18)  Additionally, a stay would allow the parties to engage in the ADR process required by the Subcontract.  (*Id.* at 16-17)  Plaintiffs oppose a stay and argue that a stay of a Miller Act claim is against public policy.  (D.I. 17 at 16-18)  Indeed, courts have found that staying Miller Act claims during the pendency of disputes between the primary contractor and the Government "contravene[s] the rights afforded to subcontractors under the Miller Act."  *U.S. ex rel. Tusco, Inc. v. Clark Constr. Grp., LLC*, 235 F. Supp. 3d 745, 758 (D. Md. 2016); *see also U.S. v. Zurich Am. Ins. Co.*, 99 F. Supp. 3d 543, 551 (E.D. Pa. 2015). However, given the ADR provisions in the Subcontract, the court finds it reasonable to exercise its discretion to grant a sixty-day stay so the parties to the Subcontract may engage in ADR.[17]  If ADR is unsuccessful, then the parties shall submit a joint status report to the court with a joint proposed scheduling order due one week following the termination of ADR proceedings.  The proposed scheduling order shall include a deadline for amendment of pleadings.

---

[17] A mediation referral has been made to Magistrate Judge Christopher J. Burke (D.I. 22) and all parties, not just the contracting parties, are encouraged to meaningfully pursue court assisted ADR.

## V. CONCLUSION

For the foregoing reasons, defendants' 12(b)(1) motion is denied, 12(b)(6) motion is granted-in-part and denied-in-part, motion to transfer venue is denied, and motion to stay is granted for a limited period. An Order consistent with this Memorandum Opinion shall issue.

Dated: April **24**, 2019

Sherry R. Fallon
United States Magistrate Judge